UNITED STATES of America,
Plaintiff-Appellee,

v.

Harlan Alexander BLACKBURN,
Defendant-Appellant.

No. 30933.

United States Court of Appeals,
Fifth Circuit.

July 15, 1971.

Rehearing Denied Sept. 14, 1971.

Edward R. Kirkland, Orlando, Fla., for defendant-appellant.

John L. Briggs, U. S. Atty., Bernard H. Dempsey, Jr., Ronald H. Watson, Asst. U. S. Attys., Tampa, Fla., for plaintiff-appellee.

Before COLEMAN, GOLDBERG and DYER, Circuit Judges.

DYER, Circuit Judge:

Blackburn appeals from a judgment entered upon a jury conviction for knowingly and willingly using facilities of interstate commerce in the furtherance of an illegal gambling enterprise in violation of 18 U.S.C.A. § 1952. Defendant argues that the trial judge committed reversible error: (1) in ruling that certain F.B.I. investigative reports were not within the purview of the Jencks Act, 18 U.S.C.A. § 3500, thereby denying his right of access to the reports; (2) in refusing to examine into the deliberations of the jury; and (3) in requiring two witnesses to testify in spite of his claim of the attorney-client privilege.

I.

Blackburn operated a gambling enterprise in Florida consisting of illegal bookmaking and lottery activities.

The Government's star witness, McCormick, had served the F.B.I. as a paid informer for approximately four years. During that time McCormick worked closely with defendant in the daily operations of his statewide gambling empire. At trial defendant requested all statements made by McCormick to the F.B.I. covering the entire period. The Government furnished defendant with all statements made by McCormick to F.B.I. agents which related to McCormick's testimony on direct examination. These statements were in the form of investigative reports containing memoranda of agents' interviews with McCormick.

The trial court conducted an extensive hearing during which it examined F.B.I. agents Hafley and Smith, informer McCormick, and the Government's prosecuting attorney to determine whether the voluminous reports concerning the four year period could possibly have contained Jencks Act statements. Smith explained that as a matter of established F.B.I. procedure, these reports were prepared by the agent who interviewed the witness. After making notes of the conversation, the agent would return to his office and write down his version of the conversation. Finally, the report would be filed with the F.B.I.

Agent Hafley, who actually conducted the interviews with McCormick over the four years, testified in effect that he followed this established procedure in every detail in conducting interviews with McCormick. In composing the reports, Hafley stated, he never quoted McCormick directly, unless perhaps it was a particular trade term that might be used in the gambling world. Otherwise, the reports were in his words; not in the words of McCormick. Moreover, McCormick never signed any notes, statements or reports. Hafley summarized by stating that these reports "were substantially my interpretations of the interview with Mr. McCormick and the information he had given me." McCormick testified that he only gave verbal information to the agent, that the

written reports were not his reports, and that he had never seen any of them.

The trial court refused to require production of the reports.

As we said in Matthews v. United States, 5 Cir. 1969, 407 F.2d 1371, cert. denied, 1970, 398 U.S. 968, 90 S.Ct. 2177, 26 L.Ed.2d 554:

> It is the primary duty of the trial judge to determine the producibility of a statement under the Jencks Act. Scales v. United States, 367 U.S. 203, 258, 81 S.Ct. 1469, 6 L.Ed.2d 782. Although his ruling is subject to appellate review, it is sustainable unless clearly erroneous.
>
> The trial judge is granted substantial latitude in determining producibility, including authority to interrogate either the witness or the government agent or conduct an *in camera* inspection.

*Id.* at 1376; Lloyd v. United States, 5 Cir. 1969, 412 F.2d 1084, 1088.

Our review of the record impels the conclusion that the trial court's inquiry of the witnesses was sufficient without an *in camera* inspection of voluminous reports covering a four-year period, to determine that the reports were not adopted or approved by McCormick, and that, except for the reports tendered by the Government, there were none which related to the subject matter of McCormick's testimony. The trial court's determination concerning the producibility of the reports under the Jencks Act was not clearly erroneous. Campbell v. United States, 1963, 373 U.S. 487, 493, 83 S.Ct. 1356, 10 L.Ed.2d 501; United States v. Graves, 5 Cir. 1970, 428 F.2d 196, 200, cert. denied, 400 U.S. 960, 91 S.Ct. 360, 27 L.Ed.2d 269.

II.

■■ After the jury returned a verdict of guilty, defense counsel moved for a new trial alleging that one of the jurors had telephoned an associate of defendant and had told her that the jury foreman had "harassed them pretty

strong." At the post-trial hearing, the juror flatly denied this allegation. The trial judge then denied defendant's request that the court interrogate the other jury members to determine if such pressure had actually been exerted by the foreman. Defendant's argument that the trial court abused its discretion by refusing to inquire into the deliberations of the jury is without merit. The record is barren of any showing of juror misconduct. In any event, the jury's verdict of guilty cannot be impeached by the fact that a juror may have been influenced by the improper remark of a fellow juror. Klimes v. United States, 1959, 105 U.S.App.D.C. 23, 263 F.2d 273. "The jury should not be exposed to post-verdict fishing expeditions into their mental processes with the hope that something will turn up." Dickinson v. United States, 5 Cir. 1970, 421 F.2d 630, 632; see United States v. Stoppleman, 1 Cir. 1969, 406 F.2d 127, 130, cert. denied, 395 U.S. 981, 89 S.Ct. 2141, 23 L.Ed.2d 769; United States v. Grieco, 2 Cir. 1958, 261 F.2d 414, cert. denied, 359 U.S. 907, 79 S.Ct. 582, 3 L.Ed.2d 572.

### III.

■ Finally, defendant's assertion—that the trial judge erred in requiring witnesses Murasko and Kelly to testify over his claim of an attorney-client privilege—requires little comment. Murasko and Kelly, both attorneys, had represented defendant in prior dealings. As to Murasko, the record clearly supports the trial judge's ruling that defendant expressly waived the privilege in the presence of Kirkland, his trial counsel, and government attorneys at a meeting prior to trial in Kirkland's office. "[W]hen the client and attorney themselves, for purposes beneficial to the client, lift the veil, they cannot lower it again." United States v. Shibley, S.D.Cal.1953, 112 F.Supp. 734.

■ The communications between defendant and Kelly were not privileged, since third persons were present at the time the communications were made. See Cafritz v. Koslow, 1948, 83 U.S.App.D.C. 212, 167 F.2d 749, 751.

The judgment of the District Court is affirmed.